IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ERNEST PITTS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:12-CV-75 (MTT) |
| | ) |
| BAKERY AND CONFECTIONERY | ) |
| UNION AND INDUSTRY | ) |
| INTERNATIONAL PENSION FUND, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

This lawsuit, filed pursuant to the Employer Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), involves the denial of pension benefits. The parties have filed cross Motions for Summary Judgment. (Docs. 20, 21). For the reasons that follow, the Defendant's Motion is **GRANTED** and the Plaintiff's Motion is **DENIED**.

### I.   BACKGROUND

The Plaintiff went to work for the Keebler Company in November 1969.[1] He remained there until entering the Air Force May 26, 1971, where he served until his honorable discharge on May 26, 1974. After his discharge, the Plaintiff returned to Keebler and continued working through 1977. (Doc. 19-1 at 196-210, 221-23, 245-51;

---

[1] The Plaintiff's March 2000 application for pension benefits lists a start date of June 1969. (Doc. 19-1 at 197). However, he lists a November 1969 start date in both his June 2011 pension evaluation request and in his Response to the Defendant's Motion for Summary Judgment, and records from the Social Security Administration support this later date. (Doc. 19-1 at 221, 248; Doc. 23 at 4). Accordingly, the Court concludes the Plaintiff began work at Keebler in November 1969.

Doc. 22-1, ¶ 8). At some point around 1977, the Plaintiff developed mental and physical disabilities that ultimately required him to stop working. For purposes of pension calculation, the Defendant concluded the Plaintiff's periods of disability occurred in 1977, 1978, and 1979 and awarded the Plaintiff disability pension credit as if he had worked through the end of 1979. (Doc. 19-1 at 245-47, 255).

### A. The Pension Fund

The Defendant is a multi-employer defined benefit pension fund governed by ERISA. (Doc. 19-1 at 10, 12, 102; Doc. 22-1, ¶ 2). The employers who participate in the fund, like Keebler, do so by collective bargaining agreements with local affiliations of the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union. (Doc. 19-1 at 10; Doc. 22-1, ¶ 2). The fund's terms are outlined in its Rules and Regulations, which provide for several different benefit plans, each with different terms. (Doc. 19-1 at 5-80; Doc. 22-1, ¶ 7).[2] The Plaintiff participated in plans A, B, C, and D. (Doc. 22-1, ¶ 7).

#### 1. Plan A

Plan A provides for a Normal Pension, Reduced Pension, Early Retirement Pension, Disability Pension, or Vested Deferred Pension. (Doc. 19-1 at 16-19). A participant is eligible for a Normal Pension when all of the following conditions are met:

(a) he has attained Normal Retirement Age;
(b) he has at least 25 years of Pension Credit;

---

[2] These terms are explained in more general language when distributed as a summary guide to plan participants. (Doc. 19-1 at 81-127).

    (c) he has at least 504 hours of service in Covered Employment during the Contribution Period.

(Doc. 19-1 at 16). A participant is eligible for a Reduced Pension when all of the following conditions are met:

    (a) he has attained age 65;
    (b) he has at least 15 years but less than 25 Years of Pension Credits;
    (c) he has at least 504 Hours of Service in Covered Employment during the Contribution Period;
    (d) he has at least 504 Hours of Service in Covered Employment during the Contribution Period subsequent to his 54th birthday, or he has at least 10 Years of Pension Credit under Plan B.

(Doc. 19-1 at 17). A participant may retire on an Early Retirement Pension when he meets the following requirements:

    (a) he has attained age 55;
    (b) he has at least 15 years of Pension Credits or he is vested and has at least 10 years of Pension Credit;
    (c) he has at least 504 hours of service in Covered Employment during the Contribution Period;
    (d) he has at least 504 hours of service in Covered Employment during the Contribution Period subsequent to his 54th birthday, or he has at least 10 years of Pension Credit under Plan B. The requirement of Subsection (d) of this Section shall not apply where the Participant has 25 or more years of Pension Credit.

(Doc. 19-1 at 17). A participant is eligible for a Disability Pension when the following conditions are met:

    (a) He is permanently and totally disabled;
    (b) Six months has elapsed since the onset of the disability;
    (c) He has at least 15 Years of Pension Credits or he has at least 10 years of Pension Credits and has credit for at least one hour of service after January 1, 1999;
    (d) He has at least 504 Hours of Service in Covered Employment during the Contribution Period;

    (e) He has at least 504 Hours of Service in Covered Employment in the last 12 months preceding the onset of his disability.

(Doc. 19-1 at 17).  A participant has the right to a Vested Deferred Pension if:

    (1) he has credit for at least 10 years of Vesting Service;
    (2) he has credit for at least 5 years of Vesting Service and is credited, on or after January 1, 1989, with at least one hour of service that
        (i) is for work as an Employee of a Contributing Union, Contributing Credit Union, or Contributing Welfare Fund, and
        (ii) is not covered by a collective bargaining agreement;
    (3) he has credit for at least 5 years of Vesting Service and is credited, on or after January 1, 1999, with more than one Hour of Service; or
    (4) he reaches Normal Retirement Age on or after January 1, 1976, and subsequently retires with less than 15 years of Pension Credits and at least 375 Hours of Service in Covered Employment during the Contribution Period.

(Doc. 19-1 at 18-19).  Additionally, the Vested Deferred Pension is payable upon retirement after the participant:

    (1) has attained Normal Retirement Age, or
    (2) has attained age 55 and has accumulated at least 10 years of Pension Credit.

(Doc. 19-1 at 19).

       Common to these pensions is the requirement that, to gain entitlement to at least some benefits, the participant earn 10 years of "vesting service" or "pension credits" without incurring a "break in service."  (Doc. 19-1 at 84).  A participant receives one year of vesting service for each calendar year in which he works at least 750 hours in covered employment.  (Doc. 19-1 at 26, 84).  Similarly, a "pension credit" is calculated based on a per day basis for days worked in covered employment prior to January 1, 1976, and a per hour basis for hours worked after December 31, 1975.  Based on the number of days or hours accrued in a calendar year, the participant may be awarded up

-4-

to 12 months of pension credits per year. (Doc. 19-1 at 23). Further, the participant may receive a total of 12 months vesting service or pension credits for periods in which he is disabled, and he can earn unlimited credit for time spent in the military if his most recent prior job was with a covered employer. (Doc. 19-1 at 25-26). If the participant works fewer than 375 hours in any calendar year, a "break in service" occurs, all prior years of vesting service and pension credits are canceled, and he is no longer deemed a "participant."[3] (Doc. 19-1 at 26-27). Finally, the "normal retirement age" is, at the earliest, age 65. (Doc. 19-1 at 11).

### 2.   Plans B, C, and D

Participants who do not qualify for a Plan A pension will not qualify for pensions under plans B, C, and D, because those plans have more stringent age or service requirements. (Doc. 19-1 at 19-20; Doc. 22-1, ¶ 21). Accordingly, detailed discussion of these plans is not necessary unless the Plaintiff qualifies for a Plan A pension.

### B.   Plaintiff's Requests for Benefits

The Plaintiff first requested pension benefits in March 2000. At the time, he did not submit proof of his military service or disability as required by § 5.05 of the pension fund's Rules and Regulations. (Doc. 19-1 at 25-26, 196-210). Accordingly, the Defendant denied his request in a June 2000 letter from the pension fund manager. The Defendant found the Plaintiff was age 27 years and four months when he left covered employment in 1979 and had accumulated four years of pension credit

---

[3] But the employee may repair his break in service, and restore lost years of vesting service, if he subsequently earns another year of vesting service. (Doc. 19-1 at 27).

between 1974 and 1979. Therefore, he did not meet the minimum age and service requirements to receive a Plan A Early Retirement Pension. (Doc. 19-1 at 211-12). The next month, the Plaintiff's physician submitted to the Defendant his notes on the Plaintiff's medical history. The Defendant again denied the request for benefits. (Doc. 19-1 at 213-17). The Plaintiff did not appeal these decisions.

In December 2004, the Plaintiff submitted a letter asking for an update on his pension status. (Doc. 19-1 at 218-19). The Defendant treated this as a second request for benefits. It found the Plaintiff's status had not changed, and that same month denied the request by letter referencing the June 2000 denial. (Doc. 19-1 at 220).

In June 2011, the Plaintiff made a third request for pension benefits.[4] This time he attached records of his Air Force service and prior claim for workers' compensation benefits. (Doc. 19-1 at 221-44). Based on this additional information, the Defendant granted the Plaintiff credit for the time he served in the Air Force between May 21, 1974 and May 26, 1974, as well as 12 months disability credit for 1979. This raised the Plaintiff's total service to 8 years and 5 months of pension credit with 9 years of vesting credit. However, the Defendant's pension fund supervisor denied the Plaintiff benefits because he had not acquired 10 years of vesting service prior to 1999, and again referenced the 2000 and 2004 decisions. (Doc. 19-1 at 245-51). The Plaintiff subsequently asked for another review of his pension eligibility. (Doc. 19-1 at 252-53). The Defendant treated this as a request that its decision be reviewed by its Appeals Committee. (Doc. 19-1 at 254). The Appeals Committee met on December 14, 2011

---

[4] The Plaintiff technically sought a pension evaluation rather than a pension claim. However, the Defendant treated his request as a pension claim. (Doc. 19-1 at 245-251).

and affirmed the decision to deny the Plaintiff benefits. It based its decision on the following reasons: The Plaintiff did not meet the minimum age and service requirements to qualify for benefits under the Plan A Early Retirement Pension. Further, his departure from Keebler resulted in a "break in service." Finally, the Defendant concluded the Plaintiff did not qualify for a Vested Deferred Pension because he did not earn 10 years of "vesting service." (Doc. 19-1 at 255-58, 265-66).

Following the denial, the Plaintiff, proceeding pro se, filed this lawsuit March 2, 2012. (Doc. 1). He amended his Complaint April 25, 2012. (Doc. 5). He asserts a claim for the denial of pension benefits pursuant to § 502(a) of ERISA. (Doc. 5 at 1). Because this is an ERISA action, no discovery took place prior to the parties' summary judgment motions, and the Court decides this case based solely on the administrative record.

## II.   DISCUSSION

### A.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy his burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  Further, "[c]ross motions for summary judgment do not change the standard."  *Perez-Santiago v. Volusia Cnty.*, 2010 WL 917872 (M.D. Fla.) (internal citations and quotations omitted).

### B.     ERISA Analytical Framework

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)).  ERISA itself does not provide a standard for courts reviewing benefits decisions made by plan administrators or fiduciaries.  *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  Therefore, based on guidance from the Supreme Court in *Glenn* and *Firestone*, the Eleventh Circuit

"established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions." *Id*.  The steps are:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (internal citation omitted).

### C.   The Statute of Limitations

The Defendant argues the Plaintiff cannot bring his claim in federal court because he did not file suit within six years of the June 2000 denial of his request for

benefits. This argument is not without merit.[5] However, to provide some clarity for the pro se Plaintiff, and because the end result does not change, the Court declines to consider this argument and instead will address the merits of the Plaintiff's Complaint.

### D.     Denial of the Plaintiff's Claim

At the outset, the Court must determine whether the Defendant's decision to deny benefits to the Plaintiff was de novo wrong. "A decision is wrong if, after a review of the decision of the administrator from a de novo perspective, the court disagrees with the administrator's decision." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) (internal quotations and citation omitted). The Court "must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator," and "[i]f the [C]ourt determines that the plan administrator was right, the analysis ends and the decision is affirmed." *Id.* at 1246-47 (internal citation omitted).

Here, it is clear the Defendant's decision to deny the Plaintiff pension benefits was correct, and therefore not de novo wrong. According to data on which the Defendant based its decision, the Plaintiff is credited with working at least some portion of each year between 1969 and 1979.[6] However, not all of these years are years of vesting service. In 1969 and 1970, the Plaintiff worked 320 and 288 hours respectively, less than the 750 yearly hours required for vesting. Thus, these years do not count

---

[5] Although ERISA does not specifically provide a statute of limitations, this Court, Judge Clay D. Land presiding, has applied to ERISA actions Georgia's six-year contract statute of limitations pursuant to O.C.G.A. § 9-3-24. *Washington v. Verizon Communications, Inc.*, 2012 WL 2025259 at *4 (M.D. Ga.).

[6] As stated above, this includes the time periods during which the Plaintiff was serving in the Air Force or was disabled.

toward years of vesting service, and the Plaintiff can only be credited with nine years of vesting service, from 1971 through 1979.  Similarly, based on the days and hours worked between 1969 and 1979, the Plaintiff accrued no more than 8 years and 5 months of pension credits.  He possibly earned less than this.[7]  In any event, he did not earn 10 or more years of pension credits.  *See generally* Doc. 19-1 at 247 (indicating the number of days and hours the Plaintiff worked each year).  Moreover, the Plaintiff incurred a break in service in 1979 when he did not work at least 375 hours the next year.  Because he had not earned 10 years of vesting service at that point, this break in service had the effect of canceling all of his prior years of vesting service and pension credits, rendering him a non-participant in any of the pension plans.  Finally, the Plaintiff, who was born in 1951, has not yet reached the normal retirement age of 65.  (Doc. 19-1 at 196).

Accordingly, because he was never a vested participant, because he never acquired 10 or more years of pension credits, and because he has not reached normal retirement age, the Plaintiff cannot meet the minimum age or service requirements for the Plan A pensions outlined above.  Specifically, he is ineligible for a Normal Pension and Reduced Pension based on his age and insufficient pension credits; he is ineligible

---

[7] In arriving at the 8 year 5 month calculation, the Defendant may have used the wrong schedule to convert the Plaintiff's work hours to pension credits.  Specifically, the Defendant applied the conversion schedule from § 5.01(c) of the Rules and Regulations, which is intended for participants who have a pension effective date after January 1, 1999.  However, it appears the Defendant could also have used §§ 5.01(a) and 5.01(b) conversion schedules, which apply to periods of employment before and after January 1, 1976.  Whether or not the Defendant used § 5.01(c) intentionally or correctly is unclear.  However, the Plaintiff benefits from § 5.01(c) more than he does from §§ 5.01(a) and 5.01(b):  Using § 5.01(c), the Defendant calculated 8 years and 5 months of pension credits for the Plaintiff.  Under §§ 5.01(a) and 5.01(b), the Court calculates the Plaintiff would receive 7 years and 7 months of pension credits.  (Doc. 19-1 at 23).

for an Early Retirement Pension because he is not vested and has insufficient pension credits; he is ineligible for a Disability Pension because he has insufficient pension credits; and he is ineligible for a Vested Deferred Pension because he does not have a sufficient number of years of vesting service, has not worked since 1989, and has not reached normal retirement age.  Similarly, because the Plaintiff cannot qualify for a Plan A pension, neither can he qualify for a Plan B, C, or D pension.  Therefore, the Defendant correctly denied pension benefits to the Plaintiff based on his inability to meet these minimum service and age requirements.

It is difficult to discern the Plaintiff's precise arguments against the Defendant's decision.  He appears to contest the general calculation of time he is credited for working in 1969 and 1970, though it is not clear how or why he believes this calculation is wrong.  (Doc. 23 at 2, 5).  There is nothing in the administrative record that calls these numbers into question or that should have given the Defendant reason to believe them incorrect.  And the Plaintiff has offered no evidence that would place these numbers in genuine dispute.  As discussed above, the Defendant *may* have applied the wrong conversion schedule to determine the number of pension credits available to the Plaintiff based on the hours he worked in those years.[8]  But even if it did, this conversion enhanced the total number of the Plaintiff's pension credits, and in no way did it affect the underlying number of hours he was reported to have actually worked.

The Plaintiff further suggests he was not given proper credit for his time in the Air Force or his periods of his disability.  Yet it is clear from the record this is not true.  (Doc. 19-1 at 265).  And even if it were, the additional credit could not aid the Plaintiff.  That is

---

[8] *See* note 7, *supra*.

because the Defendant has already determined the Plaintiff accrued a sufficient number of work hours from 1971 to 1979 to receive a year of vesting service for each of those years. The time period in which the Plaintiff is deficient is 1969 to 1970 – years that precede both his Air Force service and the onset of his disability. (Doc. 19-1 at 247). Additionally, the Plaintiff's suggestion that he is owed credit for time spent working at Macon Builders Supply Company in 1969 has no merit. (Doc. 20 at 3). Macon Builders Supply Company is not covered employment under the Defendant's Rules and Regulations. It is not a company that has a collective bargaining agreement with a union that requires contributions to the pension fund on behalf of its employees. (Doc. 19-1 at 10; Doc. 25-1, ¶ 4).

Accordingly, the Defendant was not de novo wrong and it reached the same result this Court would reach. Therefore, the Court can end its inquiry and affirm the Defendant's decision. The Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED** and the Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**.

**SO ORDERED,** this 31st day of January, 2013.

                                              S/ Marc T. Treadwell
                                              MARC T. TREADWELL, JUDGE
                                              UNITED STATES DISTRICT COURT